Juan Díaz Arbona, recurrente, *v.* El Registrador de la Propiedad de Río Piedras, recurrido.

Número 1292.
*Sometido:* 4 de marzo de 1953. *Resuelto:* 20 de marzo de 1953.

*J. López del Valle,* abogado del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Al presentarse para su inscripción la escritura de "Acta de Protocolización de la Cuenta Particional de los Bienes dejados al óbito de don Emérito Díaz Soto",[1] el registrador de la propiedad de Río Piedras puso al calce de la misma la siguiente nota:

"Inscrito el documento, con vista del testamento que es la Escritura núm. 48, de 23 de abril de 1947, ante el notario Eduardo H. F. Dottin, y todos los otros complementarios en derecho, en cuanto a tres fincas urbanas marcadas con los números 17, 18 y 19 del inventario de Bienes de don Emérito Díaz Soto, adjudicadas en parte de pago a D. Juan Díaz Arbona, allí donde se indica al margen de la descripción de dichas fincas, sólo de que se solicitó inscripción. *Las tres fincas no reportan otras cargas que las que resultan de la testamentaría de D. Emérito Díaz Soto por pago de deudas hereditarias según el propio documento que se inscribió.* Río Piedras, a 13 de diciembre de 1948."[2] (Bastardillas nuestras.)

En 27 de agosto de 1952 el recurrente acudió ante dicho registrador con un escrito al cual acompañaba copia de la ya citada escritura; copia certificada de la resolución dictada por el antiguo Tribunal de Distrito de San Juan, aprobatoria de las operaciones de protocolización a que aquélla se refiere, demostrativa de que los honorarios del abogado y del contador-partidor que intervinieron en dichas operaciones fueron debidamente satisfechos;[3] y certificación acreditativa de haberse pagado asimismo los $2,000 que aparecen mencionados

---

[1] En lo sucesivo nos referiremos a ella como la escritura, ya que es la única escritura pública aquí envuelta.

[2] De las páginas 41 y 42 de la escritura aparece que "con excepción a los honorarios del abogado Lcdo. E. H. F. Dottin, que ha intervenido en estas operaciones y que ha representado en todo momento el albaceazgo y de los honorarios del Albacea, Contador-Partidor, Don Juan R. Molina y la deuda testamentaria de DOS MIL ($2,000) DOLLARS pertenecientes a Don Juan Rivera, todas las demás deudas han sido satisfechas."

[3] De la resolución aprobatoria de las operaciones particionales se desprende que al Lic. Dottin se le extendió un cheque por $2,700 y al Sr. Molina otro por $300.

como deuda de la testamentaría a favor de Juan Rivera. Al escrito así presentado el registrador puso la siguiente nota:

"Suspendida la inscripción de este documento por haberse consignado en sellos la suma de un .dólar cincuenta centavos de acuerdo con el Inciso 4º del Arancel de los Registros de la Propiedad y entender por el contrario que deben consignarse en sellos de Rentas Internas la suma de seis dólares cincuenta centavos de acuerdo con el Inciso 3º de dicho Arancel en armonía con la decisión del Tribunal Supremo en el caso de *Carlo* versus *Registrador de la Propiedad de Mayagüez*, 40 D.P.R. 24 (Edición Inglesa), tomando en su lugar anotación de suspensión por 120 días al margen del asiento de presentación 15 del Diario 393, de acuerdo con la Ley número 39 de 23 de abril de 1928. Río Piedras, a 29 de septiembre de 1952."

Para revisarla se ha acudido ante nos con el Recurso Gubernativo autorizado por la Ley de marzo 1, 1902 (pág. 313).

En el alegato presentado en apoyo de su recurso manifiesta el recurrente que "al practicarse dichas operaciones particionales, así aprobadas por la corte, se acreditaron como bajas del caudal relicto, entre otras, las siguientes: (1) dos mil setecientos dólares para pagar honorarios del abogado-notario E.H.F. Dottin; (2) dos mil dólares que pertenecían a Juan Rivera y tenía en su poder el causante; y (3) trescientos dólares para pagar honorarios al albacea contador-partidor;" que en 13 de diciembre de 1948 el registrador de la propiedad inscribió las adjudicaciones que figuraban en el Acta de Protocolización, e hizo constar la mención de que los asientos se practicaban sujetos a las "cargas de la testamentaría de don Emérito Díaz Soto por pago de deudas" y que "toda la cuestión que se discute es si la *nota marginal* que debe practicarse para cancelar la *mención* de bajas o deudas liquidadas en la herencia de don Emérito Díaz Soto devenga derechos por valor de seis dólares cincuenta centavos ($6.50) de acuerdo con el número 3º del Arancel contenido en la sección 22, según enmendada por la Ley núm. 102 de 12 de mayo de 1943, según alega el Registrador, o si solamente devenga un dólar cincuenta centavos ($1.50) según expresan los núms.

1 y 4 del arancel de la propia ley y el inciso (3) de la sección 31 del Código Político, según enmendada por la Ley de 14 de marzo de 1907, pág. 358, como afirmamos nosotros."

De conformidad con la sección 22 de la Ley de 10 de marzo de 1904, pág. 144, Estatutos Revisados de 1911, pág. 440, según fué enmendada por la Ley núm. 102 de 12 de mayo de 1943, pág. 283:

"El arancel de los derechos que se han de pagar en lo sucesivo por las operaciones de los registros de la propiedad... será el siguiente:

". . . Número Uno.—Asientos de Presentación y sus Notas.

"Por el asiento de presentación, nota marginal . . . cuya inscripción, anotación y nota marginal se solicita, exceptuando las cancelaciones, se devengará lo siguiente:

"(*a*) Cuando el título se refiera a seis fincas o menos de seis, $0.50, y $0.50 adicionales por cada seis fincas o fracción de seis fincas más.

". . . . . . . . . . . . .

"Número Tres.

"Por todas las operaciones, sea cualquiera su forma, que a instancia de parte deban verificarse para la cancelación o redención de hipotecas, censos o derechos reales, incluyendo el asiento de presentación y notas marginales, se devengará por cada finca:

"(*a*) Si la finca o derecho vale menos de quinientos dólares............................................ $2.00

". . . . . . . . . . . . .

"(*g*) De más de cuatro mil a cinco mil dólares.... $6.00

". . . . . . . . . . . . .

"Número Cuatro.—Notas Especiales:
Inscripciones y Anotaciones.

"Cuando por consecuencia de la presentación no deba verificarse inscripción ni anotación y sí extender notas marginales por cada una de ellas, $0.50; por cada una de las notas comprendidas en el artículo 16 de la Ley Hipotecaria $0.50."

En verdad, la única cuestión a ser resuelta es si en el caso que está ante nuestra consideración se aplican los incisos Uno y Cuatro de la sección 22, o meramente el inciso (3).

▆ Estando mencionadas solamente las deudas hereditarias, es admitido que su cancelación en el registro debe

efectuarse por notas marginales. Véanse *Carlo Rodríguez* v. *Registrador*, 40 D.P.R. 25; *Del Moral* v. *Registrador*, 20 D.P.R. 416; *Janer* v. *Registrador*, 18 D.P.R. 7.

██ En *Carlo Rodríguez* v. *Registrador*, supra, se presentó al Registro un documento público para que el registrador cancelase por notas marginales dos menciones de hipoteca, entregando $2.00 en sellos de rentas internas, de ellos 50¢ para cada una de las dos notas. El registrador devolvió el documento sin hacer operación alguna por entender que debían pagarse $2.00 por cada nota marginal de cancelación. Este Tribunal opinó que "el Registrador tiene razón porque el arancel núm. Tres se refiere particular y expresamente a cancelaciones de hipotecas, *cualquiera que sea la forma* en que se haga la operación en el registro, mientras que *el arancel núm. Cuatro no se refiere a notas marginales para cancelación de hipotecas sino a notas marginales en general.*" (Bastardillas nuestras.)

Los incisos 3 y 4 de la sección 22 de nuestra ley son idénticos a los números 5 y 6 del Arancel de la Ley Hipotecaria de España. Conforme dice el tratadista Morell en el Tomo 5 de su obra sobre Legislación Hipotecaria, a las páginas 299, 300 y 302: "*Y si se trata de cancelaciones y éstas se practican, sólo se cobra con arreglo al núm. 5º,* (núm. 3 del Arancel nuestro) . . . . *Si la cancelación se verifica, no se cobra nada,* como hemos dicho, *por el asiento de presentación,* . . . . En suma, como claramente revelan los respectivos epígrafes del Arancel que preceden a los números 5º y 6º, *aquél es el especialmente aplicable a toda clase de cancelaciones, y éste a las notas marginales especiales que no revelen cancelación.* Por si quedase alguna duda, el núm. 5º la desvanece por completo, al decir que por todas las operaciones, para obtener una cancelación, *sea cualquiera su forma,* se devengarán los honorarios que marca . . . . El número 6º (el núm. 4 del Arancel nuestro) es aplicable en el caso de que la presentación del título tenga por objeto extender una nota marginal, *nota que*

*no signifique la cancelación* de una inscripción, *de una mención*, etc., pues en tal caso rige el núm. 5º." (Bastardillas nuestras.)

En igual sentido se expresan Galindo y Escosura en su obra "Comentarios a la Legislación Hipotecaria de España." Véase el Tomo 4, a las páginas 745 y 746, donde se dice: *"Inteligencia y aplicación del núm. 5º*—como la R.O. de 20 ab. 1871 determinó *los honorarios que se habrían de satisfacer por la cancelación en forma de notas*, y como el propósito del Gobierno fué, *respecto de cancelaciones*, tener en cuenta, no el trabajo material de la extensión del asiento, sino *la importancia del derecho objeto de la cancelación*, claro es que al fijar los honorarios por esta clase de operación, había de prescindir de la forma en que se hiciera, y para evitar dudas, se puso el inciso *sea cualquiera su forma* . . . . *Inteligencia y aplicación del núm. 6º*—Siempre que el Registrador tenga que extender *una nota marginal que no sea de cancelación*, . . . . . . deberá aplicar el núm. 6º, . . .". (Bastardillas nuestras.)

Como en el presente caso el registrador de la propiedad ha de verificar una nota marginal a virtud de la cual *se cancela una mención*, el inciso aplicable de la sección 22 lo es el Número Tres y no el Número Cuatro. Como las deudas ascienden a $5,000 el registrador estuvo ajustado al exigir derechos montantes a $6.50, es decir, $6.00 de acuerdo con el apartado (*g*) del inciso (3) y 50¢ de conformidad con el párrafo (3) de la sección 31 del Código Político, según quedó enmendado por la Ley de 14 de marzo de 1907, págs. 330, 359.(⁴)

*Debe confirmarse la nota recurrida.*

---

(¹)La sección 31 del Código Político, según quedó enmendada en la forma arriba indicada dispone en lo esencial que:

"Se impondrá, cobrará y pagará:

"

"(3) Por cada registro o inscripción de dichos instrumentos o documentos o de sus copias, cincuenta centavos."